IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES RANDLE, #M27372, <br><br>  Plaintiff, <br><br> v. <br><br> KIMBERLY BUTLER, *et al.* <br><br>  Defendants. | Case No. 16-cv-01191-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

On February 5, 2021, Magistrate Judge Sison held a settlement conference, and the parties reached a settlement agreement. (Doc. 221). Additional time was needed, however, to finalize the settlement documents. (Doc. 223). The parties had sixty days to finalize the settlement and then the Court would enter judgment. On April 12, 2021, Plaintiff notified the Court that he had been transferred from Stateville Correctional Center ("Stateville") to Menard Correctional Center ("Menard"). (Doc. 224). Plaintiff also informed the Court that because of his unsafe and unsanitary conditions of confinement at Menard, he no longer intended to sign the settlement agreement. Defendants filed a motion asking the Court to enforce the settlement agreement. (Doc. 225). Plaintiff filed a response to the motion. (Doc. 226). On June 23, 2021, the Court held a hearing on the motion. (Doc. 229). Defendants were directed to provide to the Court the transcript of the settlement conference recording the agreed upon terms of the settlement and the proposed settlement agreement by July 14, 2021, for review.[1] For the following reasons, the motion is

---

[1] Defendants filed the transcript of the settlement conference under seal (Doc. 230), but submitted the settlement agreement to the Court via email. Because the Court reviewed both documents to reach its conclusion, Defendants are **DIRECTED** to file the settlement agreement under seal in the record *instanter*.

granted.

At the hearing, Plaintiff testified that at the time of the settlement conference, he was housed at Stateville. He was under the impression that he would not be transferred back to Menard. Now he has been transferred to Menard and housed in the segregation unit in a small unsanitary cell. (*See also* Doc. 224). His preexisting medical needs have been ignored, his orthopedic shoes for his bunions have been confiscated, his television has been damaged, and he has been falsely labeled a staff assaulter on his ID and in his file, placing him in serious harm of correctional staff. (Doc. 226). Plaintiff testified that he does not want money but to be placed in a single man cell. He would rather be safe from attacks by other inmates than receive money. In his response, he states that he would like the Court to "resolve some serious issues" before signing the settlement agreement. (*Id.* at p. 5).

At the hearing and in his response, Plaintiff also alleges that the settlement conference was interrupted by Warden Jacob, the head of operations and security at Stateville. (Doc. 226). Jacob came into the video conferencing room, called Plaintiff names, and threatened to move him from his single man cell to a cell with another inmate.[2] After the settlement conference, staff at Stateville retaliated against Plaintiff by attempting to reassign him to a cell with a cellmate.

Defendants contend that at the settlement conference Plaintiff agreed to settle this case in its entirety. (Doc. 225). A settlement agreement was established at the time, as there was an offer, acceptance, and a mutual meeting of the minds on all material elements. As there was an agreement supported by consideration, the settlement agreement should be enforced as a matter of law. They further argue that Plaintiff changing his mind is an insufficient reason not to enforce the agreement. Additionally, the Defendants are no longer employed by the Illinois Department of Corrections,

---

[2] Plaintiff claims he cannot be housed with another inmate due to his mental illnesses. (Doc. 226, p. 2).

and thus, Plaintiff's current circumstances have nothing to do with the underlying claims or Defendants in this case. The ask the Court to direct Plaintiff to execute the settlement documents or, in the alternative, dismiss the case with prejudice.

Oral settlement agreements are enforceable under Illinois law if "there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Wilson v. Wilson*, 46 F.3d 660, 600 (7th Cir. 1994)(quoting *Brewer v. Nat'l R.R. Passenger Corp.*, 628 N.E.2d 331, 335 (Ill. App. Ct. 1993)). The essential terms must be "definite and certain" so that a court can ascertain the parties' agreement from the stated terms and provisions. *Quinlan v. Stouffe*, 823 N.E.2d 597, 603 (Ill. App. Ct. 2005). The agreement must be sufficiently definite with respect to all material terms. *Id*. at 1061. Material terms are sufficiently definite when they enable a court to ascertain the agreement between the parties. *See Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry." *Id.*

The Court finds that the parties reached a valid, enforceable settlement, even though Plaintiff has not signed the settlement agreement. The transcript from the settlement conference demonstrates that Magistrate Judge Sison dictated the terms of the settlement agreement on the record as he understood them and made sure the parties agreed to those terms. (Doc. 230). Specifically, Magistrate Judge Sison stated the monetary amount that Plaintiff would receive, that the parties would bear their own costs, and that the agreement would "result in a mutual release against all claims against each other regarding this case." (*Id.*). The memorialization of the settlement agreement as amended at Plaintiff's request and sent to him on April 7, 2021, includes the material terms as summarized by Magistrate Judge Sison on the record. Therefore, the record supports a finding that the essential terms of the oral agreement were sufficiently "definite and certain" so that the Court can ascertain the parties' agreement. *Quinlan,* 823 N.E. 2d at 603.

Furthermore, the objective conduct of the parties demonstrates that a meeting of the minds occurred. At the settlement conference, the parties verbally stated agreement with the material terms of the settlement agreement as summarized by Magistrate Judge Sison.

As to the unprofessional and maybe even unlawful misconduct on the part of Stateville staff during and after the settlement conference, there is nothing in the record demonstrating that the interruption or subsequent alleged retaliation influenced Plaintiff's decision to settle the case. Plaintiff confirmed on the record at the settlement conference that he understood that it was his decision to settle the case and that no one coerced or forced him into settlement. He also stated that no additional promises were made to him, outside of the terms of the settlement agreement, to incentivize settlement. Furthermore, Plaintiff testified at the hearing before this Court that he did not have any issues with the terms of the settlement agreement. Rather, he wanted to bring to the Court's attention the disrespectful conduct of Warden Jacob and his transfer back to Menard. Neither the conduct by Stateville staff, nor Plaintiff's subsequent transfer, renders the settlement agreement unenforceable. *See Glass v. Rock Island Refining Corp.,* 788 F. 2d 450, 454-55 (7th Cir. 1986) (a party cannot avoid a previously-made settlement agreement by changing his mind later on). The parties reached an enforceable oral agreement on February 9, 2021, and Plaintiff cannot delay execution of the agreement in an effort to resolve further constitutional violations that have occurred since the settlement conference.

Accordingly, the motion to enforce the settlement (Doc. 225) filed by Defendants is **GRANTED.** Defendants are **DIRECTED** to send new copies of the settlement agreement, as amended and sent on April 7, 2021, to Plaintiff by **August 18, 202**1. Plaintiff must complete and return the settlement paperwork to Defendants no later than **September 1, 2021.** Defendants shall file a status report with the Court on or before **September 15, 2021,** advising the Court of whether the settlement agreement has been fully executed and submitted to Central Management Services

for creation of a payment voucher.

Defendants are **DIRECTED** to file the settlement agreement, as amended and sent to Plaintiff on April 7, 2021, under seal in the record *instanter*.

The Clerk of Court is **DIRECTED** to enter judgment dismissing this action with prejudice and without costs **60 days** from the date of this Order.

Finally, the motion for temporary injunction (Doc. 232) filed by Plaintiff is **DENIED.** Following the Court's ruling on summary judgment, Plaintiff is proceeding on one count for unconstitutional conditions of confinement while at Menard from 2012 until 2016. Plaintiff now seeks emergency injunctive relief from new constitutional violations that have recently occurred at Menard committed by individuals who are not parties to this case. This case is passed summary judgment and has settled. Not only is it too late to amend the complaint, but a temporary restraining order or preliminary injunction is not a proper avenue to do so. *See Chancellor v. Bank of Am.*, No. 14-cv-7712, 2018 WL 3970139, at *5 (N.D. Ill. Aug. 20, 2018) ("Rule 15(b) does not prove for amending a complaint after settlement.") (internal citations and quotations omitted). If Plaintiff wishes to pursue emergency injunctive relief for these unrelated claims, he should file a separate case under 42 U.S.C. § 1983. The Court states no opinion on the merits of any such claims.

**IT IS SO ORDERED.**

**DATED:   August 11, 2021**

 s/Stephen P. McGlynn
**STEPHEN P. MCGLYNN**
**United States District Judge**
